UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LAURI FARRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-565-CCS |
| | ) | |
| FINCHUM SPORTS FLOORS, a sole proprietorship, and LARRY FINCHUM, | ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 38].

Now before the Court is Plaintiff's Motion for Partial Summary Judgment [Doc. 53]. The Defendants filed a Response [Doc. 62] in opposition to the Motion. The Motion is ripe for adjudication. Accordingly, for the reasons fully explained below, the Court finds the Motion [**Doc. 53**] not well taken, and it is **DENIED**.

## I. BACKGROUND

The Complaint [Doc. 1] in this case was filed on December 5, 2014, and raises allegations of sexual harassment by Defendant Larry Finchum. The present matter before the Court is whether Plaintiff was an employee or an independent contractor while working for Defendant Finchum Sports Floors ("FSF"). The facts are largely disputed. The parties agree that Plaintiff worked at FSF for about three to four years from around 2010 to March 7, 2014. [Doc. 54 at ¶ 3, Doc. 62 at 2]. Defendant Finchum claims that Plaintiff began working as a bookkeeper and did not submit a job application prior to performing work for FSF and that he never provided Plaintiff with an

employee handbook or training manual. [Doc. 62 at 2]. In addition, Defendant Finchum states that he did not keep a personnel file for Plaintiff. [*Id.*].

Plaintiff does not explain whether she was hired as a bookkeeper, or what she was actually hired to do, but states that Defendants provided her verbal lists of duties to perform, they taught her how to fill out complicated forms for construction payment requests, and she was required to complete bookkeeping, payroll, and accounts receivable duties. [Doc. 54 at ¶¶ 17-19, 21, 22].[1] Defendants deny that they required Plaintiff to perform any tasks outside of the standard bookkeeping duties. [Doc. 62 at 3]. Plaintiff asserts, and Defendants do not dispute, that she was assigned a FSF email account and that Defendants instructed her to communicate with FSF's clients, vendors, and employees through that email account. [Doc. 54 at 7]. Plaintiff also states, and Defendants do not dispute, that she signed her emails using the FSF signature block. [Doc. 54 at ¶ 11]. On one email, she identified herself as "Office Manager," but Defendants state that Defendant Finchum never designated Plaintiff with such a title. [Doc. 54 at ¶ 13; Doc. 62 at 3].

The parties agree that Plaintiff was paid an hourly rate of $35.00. [Doc. 54 at ¶ 5; Doc. 62 at 3]. Plaintiff states that during the three to five days per week that she worked for Defendants, she performed her work at an office inside FSF. [Doc. 54 at ¶ 9]. Defendants claim that she divided the work that she performed between the FSF facility and her own office at home, although Defendant Finchum testified that he was not sure whether her home office or the FSF facility was her primary working location. [Doc. 62 at 2]. Defendants state that they did not set the hours that Plaintiff worked. [Doc. 62 at 3]. Both parties agree that Plaintiff worked less in the off season. [Doc. 54 at ¶ 10; Doc. 62 at 3]. Plaintiff claims that Defendants cut her hours in the off season,

---

[1] At one point in her brief, she states that Defendants assigned additional projects to her "that were beyond the scope of her regular bookkeeping and/or accounting responsibilities." [Doc. 53-1 at 13-14].

while Defendants claim that they sent her less work because FSF was in less need of payroll services during such times. [*Id.*].

Plaintiff claims that FSF supplied her with an office, desk, computer, printer, telephone, paper, postage and basic supplies. [Doc. 54 at ¶ 12]. As an example, she emphasizes an email that she wrote to Defendant Finchum, stating that she had spent approximately $653.00 at Staples purchasing office related supplies on behalf of FSF. [Doc. 54 at ¶ 34]. Defendants do not dispute these facts but state that Plaintiff used her own equipment while working from home. [Doc. 62 at 8].

Plaintiff states that Defendants' employees were required to complete a FSF Employee Self-Appraisal Form and that she completed a FSF Employee Self-Appraisal Form. [Doc. 54 at ¶ 36]. Defendants deny that Defendant Finchum required Plaintiff to complete an Employee Self-Appraisal Form. [Doc. 62 at 3]. Further, Defendants assert that Plaintiff completed a Form 1099 for FSF but never completed a W4 or W2 for FSF. [*Id.*]. In addition, they assert that FSF did not take any taxes out of the payments made to Plaintiff, despite the fact that they withheld taxes from every FSF employee paycheck and that they did not provide health insurance or holiday pay to Plaintiff. [*Id.*].[2] Finally, they assert that Plaintiff had the authority to hire employees for her own business without interference from FSF and that she identified as a contract laborer on an EEOC Intake Form. [*Id.*].

## II. POSITIONS OF THE PARTIES

Plaintiff moves for partial summary judgment with respect to whether she was Defendants' employee as opposed to an independent contractor. Plaintiff asserts the following reasons as to

---

[2] Although not mentioned in Plaintiff's brief, the Court observes that she testified during her deposition that no one had health insurance and that she was paid a Christmas bonus. [Doc. 62-1 at 7].

why she was Defendants' employee: (1) Defendants had a right to control the manner by which her product was accomplished; (2) she had to learn new skills to perform other duties Defendants assigned to her; (3) she worked for Defendants at least three years, working three to five days per week; (4) Defendants assigned additional projects to her besides bookkeeping duties; (5) Defendants had discretion over when and how she performed her work; (6) Defendants' method of payment to her was by the hour and not by the job performed or on a commission basis; (7) some of her work was part of Defendants' regular business; (8) Defendants provided her the tools and programs used to perform her work; and (9) the location of her work was at the office that Defendants owned and controlled.

Defendants respond [Doc. 62] that Plaintiff misrepresents several key facts in her pleadings and neglects to address voluminous lines of key testimony from Defendant Finchum's deposition that clearly establish genuine issues of material fact with respect to Plaintiff's classification as an independent contractor. Defendants argue that the facts show that Plaintiff worked as an independent contractor. Defendants assert as follows: (1) they did not exercise control over when and how long Plaintiff worked; (2) prior to working for Defendants, Plaintiff had taken college courses in bookkeeping, worked as a bookkeeper for several businesses, and operated her own bookkeeping business; (3) the three to four year duration of a business relationship does not assist Plaintiff in establishing her status as an employee; (4) Defendant Finchum denied that Plaintiff performed duties outside of her bookkeeping duties; (5) there is an issue of material fact with respect to whether Defendants had discretion over Plaintiff's duties; (6) hourly pay is not necessarily evidence of an employment relationship; (7) Plaintiff's work was limited to bookkeeping responsibilities; (8) Plaintiff also used her own equipment at her home office; (9) Plaintiff split her time between FSF facilities and her office and that is the same arrangement

4

Plaintiff kept with other clients; (10) Plaintiff was entitled to hire and pay assistants; (11) FSF provided no employee benefits; and (12) Plaintiff's tax treatment shows that she was treated as an independent contractor.

## III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of

the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## IV. ANALYSIS

As mentioned above, Plaintiff has moved for partial summary judgment arguing that the undisputed facts show that she was Defendants' employee as opposed to an independent contractor. Accordingly, for the reasons further explained below, the Court finds genuine issues of material fact and that summary judgment is not appropriate.

The Court will first analyze the law with respect to independent contractors and then turn to the facts in the present matter.

### A. Overview

Plaintiff alleges that Defendants retaliated against her in violation of Title VII after she complained of being sexually harassed by Defendant Finchum and other employees. Title VII makes it unlawful for an employer to retaliate against an employee who has engaged in some type of protected activity under Title VII. 42 U.S.C. § 2000e-3(a). However, as a general rule, Title VII protects employees but not independent contractors. *Zents v. Baylor Trucking Co.*, No. 5:11-cv-1941, 2013 WL 1500678, at *6 (N.D. Ohio Apr. 11, 2013). For purposes of Title VII, an "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f); *see Marie v. Am. Red Cross*, 771 F.3d 344, 352 (6th Cir. 2014) ("The circularity of this definition renders it quite unhelpful in explaining whom Congress intended to include as an employee in the workplace.").

The Supreme Court has explained, however, "that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The Supreme Court has also explained:

> In determining whether a hired party is an employee under the general common law of agency, we consider [1] the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; [13] and the tax treatment of the hired party.

*Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989); *see also Marie*, 771 F.3d at 352 (analyzing the same factors). Further, courts have stated as follows:

> The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts, . . . the question is to be resolved by the finder of fact in accordance with the appropriate rules of law.

*Lilley v. BTM Corp.*, 958 F.2d 746, 750, n. 1 (6th Cir. 1992); *see also Alfred v. Tennessee Farmers Mut. Ins. Co.*, 8 F. Supp. 2d 1024, 1026 (E.D. Tenn. 1997) (stating the same), *aff'd*, 145 F.3d 1329 (6th Cir. 1998).

With the above analysis in mind, the Court turns to the issues in the present case. [3]

---

[3] The Court observes that no party argued whether FSF is in business. As the Sixth Circuit explained, however, "[t]he parties agree that the factor relating to whether the hiring party is in business is irrelevant and unhelpful to this analysis, as almost any hiring party is in business. *Weary v. Cochran*, 377 F.3d 522, 525 (6th Cir. 2004)

### B. Employee or Independent Contractor

As mentioned above, Plaintiff asserts that she is entitled to partial summary judgment with respect to the issue of whether she was Defendants' employee as opposed to an independent contractor. The Court has reviewed the factors outlined above and finds that there are genuine issues of material fact as to whether Plaintiff was an employee or an independent contractor.

As the Court noted at the onset, the facts are largely disputed. With respect to the first factor (right to control the manner and means by which the work is accomplished), Plaintiff asserts Defendants controlled when, where, and how she performed her duties. She asserts that she came into the office three to five days per week to perform her assigned duties. In addition, she claims that Defendants required her to communicate with FSF clients when performing her tasks through a FSF email account, Defendants verbally gave her a list of duties that she was required to follow, and that Defendant Finchum trained her on how to send certain documentation to customers that was necessary for FSF to receive payment. She also claims that she did not have discretion to perform many duties, such as processing payroll and what licensure information to send in order to obtain bids or apply for payment. On the other hand, Defendants deny these allegations and assert that they did not set hours for Plaintiff to work, that she divided her time between FSF and her home (similar with how she worked for other clients), and that she did not perform tasks outside of her standard bookkeeping duties. Defendants do not deny that they required her to use FSF's email account but assert that FSF is entitled to maintain uniformity.

The Court has considered the parties' positions but finds that it does not have sufficient information before it to determine whether Defendants had a right to control the manner and means by which work was accomplished. Moreover, while Plaintiff claims she performed other duties, which Defendants dispute, Plaintiff has not explained to the Court the duties that were expected

of her when she began working for Defendants. Accordingly, the Court finds genuine issues of material fact exist with respect to this factor.

With respect to the skills required, the Court also finds that it does not have sufficient evidence before it to determine whether this factor weighs in Plaintiff's favor. Plaintiff argues that she took some courses in accounting and bookkeeping but that she did not have a college degree specifically pertaining to bookkeeping or accounting and that she was not a professional. The Court observes, however, that she started her own company, With a Personal Touch Bookkeeping. [Doc. 62-1 at 3]. She states that she learned new skills directly as a result of her employment with FSF and that Defendant Finchum trained her to calculate retainage. She also learned how to send invoices along with specific documents to ensure final payment, and she assisted on submitting bids for flooring installation. Defendants dispute these allegations and claim that she performed her standard bookkeeping duties, which she had performed since the 1980s. Further, it is not clear whether these alleged new skills were really just part of her accounting skills. In addition, the Court observes it is not entirely clear whether she continued to work for other clients at this time. Although not mentioned in Plaintiff's brief, Plaintiff testified that in 2010, she "might have worked one or two times for someone" else but not on the days that she worked for Defendants. [Doc. 62-1 at 6].

With respect to the source of instrumentalities and tools, it appears to the Court that Plaintiff used both her own instrumentalities and tools and FSF's instrumentalities and tools. Similarly, with respect to location, Plaintiff worked at home and at FSF's office, which is the same arrangement she had with other clients.

Likewise, with respect to duration, Plaintiff argues that she spent three to four years working for Defendants, three to five days per week. Defendants do not dispute Plaintiff's claim

9

but assert that contracting relationships between businesses and accountants are likely to be longstanding. "In evaluating the duration of the relationship, the Court is not concerned with the length of the relationship, but rather, when hired whether the relationship was one of a long-term, at-will employee or one to complete a particular task in a specified time-frame." *Lantz v. U.S. Postal Serv.,* No. 2:05-CV-207, 2006 WL 2882347, at *3 (W.D. Mich. Oct. 5, 2006). The Court observes that Plaintiff worked for Defendants for quite some time, but the Court has no facts with respect to the circumstances surrounding when she was hired.[4] Accordingly, this factor does not weigh in favor of either.

With respect to whether Defendants had the right to assign additional projects to Plaintiff, the parties disagree. Plaintiff asserts that Defendants assigned her several additional projects or tasks besides "her regular bookkeeping and/or accounting responsibilities." [Doc. 53-1 at 14]. Plaintiff lists eleven additional projects Defendants allegedly assigned to her. The Court observes that several of these tasks indicate that she was performing additional projects, such as going to Staples to purchase office supplies. In addition, it appears she was communicating with customers about matters not pertaining to invoices or estimates. [Doc. 54-5 at 21]. In reviewing Plaintiff's list of additional projects, however, is not clear to the Court whether the other additional projects were part of her "bookkeeping and/or accounting responsibilities."[5] Further, the Court finds

---

[4] The Court observes that in her deposition, Plaintiff testified that Defendant Finchum stated that he needed someone to do payroll, accounting, and pay the bills and asked if Plaintiff would come in on a regular basis. [Doc. 62-1 at 5]. Plaintiff stated that Defendant Finchum did not explain "regular basis," but she understood it to mean working at least Thursday and Friday and another day or two to complete the office work. [*Id.*] She told Defendant Finchum that since he wanted her to work on a "regular basis," she would charge him $35 per hour instead of her normal $40. [*Id.*].

[5] The Court observes that Plaintiff also states that she submitted bids. [Doc. 53-1]. Although it is not entirely clear, it appears that she only sent the bids via email, but others prepared the quotes, including Deborah Finchum [Docs. 54-2 at 56, 54-5 at 4-5; ], Ashley Boudreau [Doc. 54-5 at 2], Ashley Garner [Doc. 54-5 at 10].

Plaintiff has not presented sufficient evidence that Defendants had the *right* to assign her additional tasks. See *Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 475 (6th Cir. 2008) ("Janette fails to submit any evidence that the Appellees had the *right* to assign her additional tasks. If any such requests were made, Janette had a right to decline them or negotiate for additional pay.") (Emphasis in original).

Further, with respect to the extent of Defendants' discretion over when and how long she worked, the parties also dispute this factor. Plaintiff argues that Defendants controlled when and how often she performed her job duties since they controlled how many days per week she worked. Defendants argue that they did not set the hours that Plaintiff worked and that they sent her less work during the slow season because FSF was in less need of payroll services during those times.

With respect to the method of payment, the parties agree that Plaintiff was paid hourly. Some courts have indicated that being paid per hour is indicative of an employee relationship as opposed to an independent contractor. *See Zents,* 2013 WL 1500678, at *8. The Court agrees that hourly pay can be indicative of an employer-employee relationship; however, the Court also observes that Plaintiff testified that she charged her other clients by the hour and that she was not an employee of these clients. Plaintiff continues that courts may consider the history of the position and argues that after her termination, Defendants hired a full-time employee as the general manager/bookkeeper and paid her on a salary basis. Defendants assert, however, that their new employee performs additional tasks that Plaintiff did not perform. *See generally Trustees of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.,* 395 F.3d 244, 250 (6th Cir. 2005) (rejecting argument that use of employees and independent contractors to perform same work is an indication that workers were "misclassified" as independent contractors).

The Court has also considered whether Plaintiff's work was part of FSF's regular business. Plaintiff alleges, and Defendants do not dispute, that FSF was in the business selling and installing indoor athletic flooring. The Court finds that it does not have sufficient information on this factor as well, given the parties' factual disputes. In considering this factor, the Court has reviewed the eleven additional projects that Plaintiff alleged were assigned; however, it is still unclear whether these alleged additional duties were part of FSF's regular business of "selling" and "installing" floors. For instance, as mentioned above, Plaintiff states that she submitted bids, but it appears that this task simply means sending the bids via email that other employees prepared. *See* [Doc. 54 at ¶ 26] ("Farrell assisted FSF and/or Finchum in submitting quotes and/or bids on potential flooring installation jobs via FSF emails which copied Finchum.").

Finally, Plaintiff did not argue that she was entitled to employee benefits,[6] she did not discuss that she completed a 1099 Form and that FSF treated her differently than its other employees with respect to taxes, and Defendants' assertion that she was allowed to hire assistants. Accordingly, the Court finds that partial summary judgment is inappropriate at this stage.

## V. CONCLUSION

Accordingly, for the reasons explained above, Plaintiff's Motion for Partial Summary Judgment [**Doc. 53**] is **DENIED**. This case remains set for trial on **March 27, 2018.**

**IT IS SO ORDERED**.

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] *But see* infra note 2.